# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA            )
                                    )
            v.                      )        CRIMINAL NO. 3:08-cr-07
                                    )
STERLING YAZMIN LONG-PAYTON,        )        JUDGE KIM R. GIBSON
                                    )
            Defendant.              )

## OPINION AND ORDER OF COURT

### I.      SYNOPSIS

This matter comes before the Court following a supplemental suppression hearing (hereinafter the "Supplemental Hearing") pursuant to this Court's Order of December 28, 2012 (Doc. No. 199). The Supplemental Hearing was held to decide an issue raised by Defendant Sterling Yazmin Long-Payton in her Motion to Suppress Evidence Obtained as a Result of an Unlawful Search and Seizure with Accompanying Citation of Authority (hereinafter Defendant Payton's "Motion to Suppress") (Doc. No. 28), opposed by the Government (see Doc. No. 48), and not decided by this Court's December 28, 2012 Opinion and Order of Court. Specifically, the Supplemental Hearing was held to address the limited issue of the admissibility of statements made by Defendant Payton following the second administration of Defendant Payton's *Miranda* rights at the Pennsylvania State Police barracks and the execution of a written waiver of these rights by Defendant Payton. This Court has jurisdiction pursuant to 18 U.S.C. § 3231. Venue is proper pursuant to Federal Rule of Criminal Procedure 18. For the reasons that follow, the Court will **DENY** Defendant Sterling Yazmin Long-Payton's Motion to Suppress Evidence (Doc. No. 28) as it relates to the singular issue presently before the Court.

## II.    BACKGROUND

Because the parties are familiar with the procedural history of this case, it will not be detailed at length here. The relevant history is as follows: In its December 28, 2012 Opinion and Order, this Court granted in part and denied in part Defendant Payton's Motion to Suppress. Defendant Payton's Motion to Suppress was granted as it related to certain statements made by Defendant Payton following Corporal Johnson's[1] recitation of defective *Miranda* warnings to Defendant Payton at the scene. Concluding that the factual record was insufficient to decide the admissibility of a second set of statements made at the Pennsylvania State Police barracks after a second administration of Defendant's *Miranda* warnings and Defendant's execution of a written waiver, the Court deferred ruling on the admissibility of these statements until the matter could be addressed at a supplemental suppression hearing and through the submission of supplemental Proposed Findings of Facts and Conclusions of Law. Defendant Payton's Motion was denied in all other respects.

A supplemental suppression hearing was held on February 20, 2013. At his hearing, the Defendant introduced into evidence the testimony of Trooper Brautigam, who had not testified at the previous hearing. (See Doc. No. 207 at 4-11.) The Government cross-examined this witness (see *id.* at 11-16), followed by a redirect examination by Defendant (see *id.* at 16-18). The Government introduced into evidence the Pennsylvania State Police "Rights Warnings and Waiver" form used by Trooper Brautigam to advise Defendant Payton of her *Miranda* rights (hereinafter Government Exhibit 1). (See Doc. No. 207 at 11-12.)

---

[1] At the time of the first Suppression Hearing, Robert F. Johnson was a station commander in Bedford with the rank of Sergeant. (Doc. No. 199 at 2 n.1.) At the time of the events in question, Sergeant Johnson was assigned to the Bureau of Emergency and Special Operations where he held the rank of Corporal. (*Id.*) For purposes of this Opinion, the Court will refer to Mr. Johnson with the rank held at the time relevant to the event being discussed.

On March 26, 2013, Defendant Payton filed her Supplemental Proposed Findings of Fact and Conclusions of Law (Doc. No. 208). On March 28, 2013, the Government filed its supplemental Proposed Findings of Fact and Conclusions of Law, entitled Post-Hearing Brief of the United States on Specified Issue (Doc. No. 211). The outstanding issue is now ripe for disposition.

## III. FINDINGS OF FACT

The Court made the following findings of fact in its December 28, 2012 Opinion and Order, which are restated here to provide context to the foregoing discussion.

> In response to a statement by Defendant Payton, Corporal Johnson informed Defendant Payton that he did not want her to "get on the phone" and instead told her to sit on the passenger seat of the vehicle. (*Id.*) Corporal Johnson later returned to Defendant Payton, still seated in the passenger seat of the vehicle, and advised her of her rights by stating as follows:
>
>> My name is Corporal Robert M. Johnson [*sic*] of the Pennsylvania State Police and wish to advise you that you have an absolute right to remain silent, that anything you say can and will be used against you in a court of law, that if you wish to have an attorney present during questioning you can have one if you so desire, ok? I'm not going to make you any promises, threats or anything like that, but, uh, you know, I just gotta let you know that, you know . . . .
>
> (*Id.*) Defendant Payton stated that she believed she understood her rights and began to answer questions posed by Corporal Johnson. (*Id.*) Corporal Johnson did not specifically inform Defendant Payton that an attorney would be provided for her if she could not afford one. (See *id.*) Defendant Payton was handcuffed and Defendants Payton and Gooch were thereafter removed from the scene and taken to the Pennsylvania State Police barracks. (*Id.*; Doc. No. 133 at 23, 119.) At the barracks, Defendant Payton was again advised of her rights by Trooper Jeffrey Brautigam. (Doc. No. 133 at 119.) Defendant Payton executed a written "Rights Warning and Waiver" form, which included a statement informing Defendant Payton that an attorney would be appointed to represent her if she could not afford to hire one and which was witnessed and signed by Trooper Volk. (Doc. No. 133 at 23, 119; Government Exhibit 2.)

The Court makes the following additional findings of fact based on the evidence presented at the February 28, 2013 Suppression Hearing.

On May 25, 2007, Trooper Jeffery Brautigam, who is employed with the Pennsylvania State Police, was called to the Somerset police barracks at approximately 4:30 in the morning. (Doc. No. 207 at 4-5.) At that time, Trooper Brautigam was assigned to a DEA task force in Pittsburgh. (*Id.* at 5.) Trooper Brautigam was contacted by either Sergeant DeLuca or Corporal Johnson with respect to a traffic stop on the Pennsylvania Turnpike during which the officers seized a quantity of ecstasy and pursuant to a policy of the state police that any troopers on the roads who come across a large shipment of drugs, guns, or money are to contact one of the individuals from the DEA task force, such as Trooper Brautigam. (*Id.*) Trooper Brautigam was requested to assist in interviewing the Defendants and determining the future steps to be taken with respect the seized drugs. (*Id.*)

Either Sergeant DeLuca or Corporal Johnson informed Trooper Brautigam that they had received consent to search the vehicle and retrieved the seized items. (*Id.* at 6.) Trooper Brautigam did not review a video or audiotape of the vehicle stop before proceeding with his investigation (*id.* at 7, 9) or have any extended discussions with Trooper DeLuca or Corporal Johnson about what occurred at the scene (*id.* at 6). At 5:30 in the morning, Trooper Brautigam, dressed in civilian clothes, began interviewing Defendant Gooch, a co-defendant in this matter. (*Id.* at 7, 15.) Defendant Gooch and Defendant Payton were kept separate during their interviews with Trooper Brautigam. (*Id.* at 7.)

Upon the conclusion of this interview, Trooper Brautigam sat down with Defendant Payton and Trooper Volk, who was present as a witness during both the *Mirandizing* process and the interview of Defendant Payton. (See *id.* at 7, 10.) Using the Pennsylvania State Police *Miranda* form (hereinafter the "Rights Warning and Waiver" form), Trooper Brautigam filled out the form, read the form to Defendant Payton verbatim, allowed Defendant Payton to follow

along, had Defendant Payton read the waiver, and presented Defendant Payton with an opportunity to sign the form. (See *id.* at 8, 12-13.) This process occurred at 6:35 a.m and took approximately five minutes (*id.* at 10, 17), about 30 seconds of which consisted of reading the Rights Warning and Waiver form (*id.* at 17). Defendant Payton read the waiver and signed the Rights Warning and Waiver form, introduced into evidence as Government Exhibit 1. (*Id.* at 12-14; Government Exhibit 1.) A conversation between Trooper Brautigam and Defendant Payton then ensued. (Doc. No. 207 at 14.) The Rights Warning and Waiver form was also signed by Trooper Brautigam (*id.* at 12) and Trooper Volk (*id.* at 10). Trooper Brautigam was unaware, during the entirety of the *Mirandizing* and interview process, that Corporal Johnson failed to advise Defendant Payton that she had a right to have counsel appointed if she was unable to afford counsel. (*Id.* at 8-9; see *id.* at 4-5, 11.)

At the time of her interview with Trooper Brautigam, Defendant Payton did not appear to be under the influence of any substance or complain of being in any type of medical need or distress. (Doc. No. 207 at 14.) Trooper Brautigam did not recall if Defendant Payton asked for any breaks to go to the bathroom but would have allowed her to go to the bathroom if she had made such a request. (*Id.* at 14-15.) Trooper Brautigam testified he was sure that during the interview Defendant Payton was asked if she wanted anything to drink or eat and would have been provided with something to drink or eat if she indicated that she would like something. (*Id.* at 15.) Only Trooper Volk was present with Trooper Brautigam and Defendant Payton during the interview. (*Id.*) Neither Trooper Volk nor Trooper Brautigam yelled or screamed at Defendant Payton. (*Id.* at 13, 15.) No firearms were displayed during the interview. (*Id.* at 15-16.)

5

Trooper Brautigam's conversation with Defendant Payton was casual and very low-key. (*Id.* at 13-14.) Defendant Payton's demeanor was laid-back and polite. (*Id.* at 15.) Defendant Payton spoke to Trooper Brautigam in a conversational tone, was cooperative, and responded to Trooper Brautigam's questions in an appropriate, articulate, and concise manner. (*Id.* at 13, 15, 17.) Defendant Payton did not raise her voice, show any type of anger or duress, or cry during her conversation with Trooper Brautigam. (*Id.* at 13-14.) In speaking with Defendant Payton, Trooper Brautigam attempted to "get to [Defendant Payton's] level" and become her friend. (*Id.*) Trooper Brautigam did not recall the length of Defendant Payton's interview but, based on the length of his report, which Trooper Brautigam reviewed prior to testifying, and the length of the questions and answers, Trooper Brautigam estimated it to be approximately a half-hour. (*Id.* at 11, 16; see *id.* at 6, 16.)

## IV.    CONCLUSIONS OF LAW

As stated above, the instant Opinion addresses only the "second set" of statements made by Defendant Payton at the Pennsylvania State Police barracks after Trooper Brautigam read Defendant Payton her *Miranda* rights.[2] Defendant Payton argues that these statements must be suppressed. (See Doc. No. 28 at 32; Doc. No. 150 at 48; see generally Doc. No. 208.) The Government maintains that these statements are admissible. (See Doc. No. 48 at 20; Doc. No. 187 at 30; see generally Doc. No. 211.)

Where a suspect is properly *Mirandized* and makes one or more incriminating statements only after making similar unwarned statement, the admissibility of the suspect's postwarning statements are governed by the Supreme Court's decision in *Oregon v. Elstad*, 470 U.S. 298 (1985) and the Supreme Court's plurality opinion in *Missouri v. Seibert*, 542 U.S. 600 (2004), as

---

[2] For ease of reference, the statements at issue in the instant Opinion will be referred to as Defendant Payton's second set of statements.

6

narrowed by Justice Kennedy, see *United States v. Kiam*, 432 F.3d 524, 531-33 (3d. Cir. 2006) (clarifying the proper analysis for admissibility of warned statements made after improperly unwarned statements); *United States v. Naranjo*, 426 F.3d 221, 231-32 (3d Cir. 2005). As the Government points out (see Doc. No. 211 at 6) and this Court recognized in its December 28, 2012 Opinion (see Doc. No. 199 at 150 n.20), the instant matter does not involve statements made by a properly *Mirandized* defendant after an initial interrogation in which *Miranda* warnings were *not* given, but rather statements made by a properly *Mirandized* defendant after a prior interrogation in which statements were elicited following the defendant's receipt of an incomplete and inadequate *Miranda* warning. In its previous Opinion, the Court, finding no Third Circuit precedent addressing the admissibility of properly warned statements made by a defendant after that defendant previously made statements to the police following the receipt of an incomplete and substantively inadequate *Miranda* warning, indicated its inclination to follow the holding and assumption of the Eleventh Circuit that (1) the *Elstad* general rule applies to instances, like this one, where the initial statements are inadmissible because of defective warnings as well as to instances where no warnings were given at all before the initial statements and (2) *Seibert* applies not only to cases where no *Miranda* warnings are given prior to the defendant's initial statement but also to cases where incomplete or defective warnings are given prior to the defendant's initial statement. (See *id.* (citing *United States v. Street*, 472 F.3d 1298, 1312, 1314 (11th Cir. 2006)).[3]

---

[3] The Eleventh Circuit held that the *Elstad* general rule "applies both to instances, like this one, where the initial statements are inadmissible because of defective warnings and to those where no warnings were given at all before the first statements" and assumed that the *Seibert* "'question first' exception may apply when incomplete or defective warnings are given, just as when no warnings are given." *United States v. Street*, 472 F.3d 1298, 1313-14 (11th Cir. 2006). Although this Court's December 28, 2012 Opinion only explicitly referenced the Eleventh Circuit's assumption with respect to *Seibert* (see Doc. No. 199 at 50 n.20), the Court's surrounding discussion clearly indicates its inclination to apply *Elstad* and *Seibert* to the instant case, in part based upon *United States v. Street*, 472 F.3d 1298 (11th Cir. 2006) as a persuasive authority (see Doc. No. 199 at 50-51).

Defendant argues that the Court's analysis of the situation in this case, where Defendant Payton was subject to a custodial interrogation following an inadequate rendering of *Miranda* warnings and where the subsequent *Miranda* warnings, while literally correct, did not address the inconsistency of the warnings rendered to her, should be guided by *United States v. San Juan-Cruz*, 314 F.3d 384 (9th Cir. 2002). (See Doc. No. 208 at 5-9.) The Government argues that *San Juan-Cruz* is distinguishable and that *Elstad*, *Seibert*, and *Kiam* are instructive. (See Doc. No. 211 at 6, 9.) The Court finds *San Juan-Cruz* distinguishable and is not persuaded that its analysis should be applied to the instant case.

In *San Juan-Cruz*, the defendant was apprehended while trying to illegally re-enter the United States. *San Juan-Cruz*, 314 F.3d at 386. San Juan-Cruz was initially advised of his administrative rights by a Border Patrol Agent, who informed San Juan-Cruz that he had the right to have counsel present during questioning, but "not at the Government's expense." *Id.* at 386, 388. Soon thereafter, San Juan-Cruz was warned that he could be subject to criminal prosecution and was read his *Miranda* rights by the same Agent from a pre-printed card, which included the statement that "If you can't afford a lawyer, one will be appointed for you before any questioning, if you wish." *Id.* at 386-87. San Juan-Cruz then made incriminating statements, which he later sought to suppress. See *id.* The Ninth Circuit concluded that "[w]hen one is *told clearly* that he or she does not have the right to a lawyer free of cost and then subsequently advised, 'if you can't afford a lawyer, one will be appointed for you' it is confusing" and, upon consideration of the totality of the circumstances, held that the substance, content, and clarity of the warnings did not convey to San Juan his rights under *Miranda*. *Id.* at 388-89 (emphasis added).

Several differences exist between *San Juan-Cruz* and the instant case. In *San Juan-Cruz*, two affirmative contradictory statements were made. See *id.* at 388. Here, by contrast, Defendant Payton was never informed that she had a right to an attorney only at her own expense. Rather, she was twice informed that she had a right to have an attorney present, but only once informed that an attorney would be appointed to represent her without charge before questioning if she desired to have and could not afford an attorney. (Compare Doc. No. 199 at 12 with Government Exhibit 1.)[4] In *San Juan-Cruz*, the two sets of conflicting instructions were read to the suspect by the same agent. See *San Juan-Cruz*, 314 F.3d at 386. Here, the deficient and proper warnings were given to Defendant Payton by two different individuals—Corporal Johnson and Trooper Brautigam—at different locations—the location of the traffic stop and the Pennsylvania State Police barracks.

The Court finds that the case at hand is more similar to the situations governed by *Elstad* and *Seibert* where the defendant makes a statement during a custodial interrogation without receiving a *Miranda* warning and thereafter makes another statement after receiving a proper *Miranda* warning, see *Elstad*, 470 U.S. at 300-02; *Seibert*, 542 U.S. at 604-05, than the situation in *San Juan-Cruz*, where the defendant received two affirmatively contradictory warnings, see *San Juan-Cruz*, 314 F.3d at 386-88, and the combination of these warnings did not ensure that the suspect could "reasonably ascertain . . . whether he could or could not retain the services of an attorney for free[,]" *San Juan Cruz*, 314 F.3d at 388; see also *United States v. Perez-Lopez*, 348 F.3d 839, 848 (9th Cir. 2003). Like in *Elstad* and *Seibert*, the nature of the defect here was

---

[4] In making this observation the Court does not make light of the omission in the initial *Miranda* warning given to Defendant Payton. To fully apprise "a person interrogated of the extent of his rights . . . , it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him." *Miranda v. Arizona*, 384 U.C. 436, 473 (1966). Indeed, Corporal Johnson's omission was sufficiently serious as to require suppression of Defendant Payton's statements made following this initial warning and before being properly advised of her rights by Trooper Brautigam. (See Doc. No. 199 at 47-49, 53.) The Court makes the above observation in connection with the issue presently before it—whether this omission also warrants suppression of the second set of statements made by Defendant Payton under the circumstances of this case.

an omission of the procedural safeguards required by *Miranda*. Arguably, the defect here—the omission of one of the constitutional rights of which *Miranda* requires suspects be advised—was less extreme than in *Elstad* and *Seibert*, where the officers failed to advise the suspects of any of their *Miranda* rights. Unlike in *San Juan-Cruz*, the Court does not find that the combination of the warnings here was affirmatively misleading. See *San Juan-Cruz*, 314 F.3d at 387-88.

Indeed, at least three other Circuit Courts of Appeals have applied *Elstad* to situations like the one at hand. See *Street*, 472 F.3d at 1312-14 (Eleventh Circuit applying *Elstad* to second set of statements where initial warning omitted the advice that anything suspect said could be used against him in a court of law and that an attorney would be appointed for suspect if he could not afford one); *Watson v. Detella*, 122 F.3d 450, 452 (7th Cir. 1997) (applying *Elstad* in evaluating voluntariness and admissibility of second confession where suspect made a properly warned confession only after the suspect previously admitted to crime following the administration of "some of his *Miranda* rights[, which reading] . . . failed to mention that he was entitled to the presence of appointed counsel, if he was indigent, during any police interrogation"); *Bryant v. Vose*, 785 F.2d 364, 366-68 (1st Cir. 1986) (applying *Elstad* and finding written confession admissible where suspect orally confessed after receiving an incomplete version of *Miranda* warnings and later made a written confession after receiving complete *Miranda* warnings). Additionally, in a non-precedential opinion, the Third Circuit held that "*Elstad* continues to govern the admissibility of post-*Miranda* statements when law enforcement has not deliberately employed a two-step strategy" and affirmed the district court's denial of the defendant's motion to suppress post-warning statements made after the defendant previously made statements before receiving a proper *Miranda* warning. See *United States v. Naranjo*, 223 F. App'x 167, 168-69 (3d Cir. 2007). Although the Third Circuit found that the

10

Agent initially "fail[ed] to issue *Miranda* warnings[,]" see *id.* at 169, an agent did inform the defendant before any questioning that the defendant did not have to speak to the agents, see *id.* at 168, and the Third Circuit later acknowledged, citing *Street*, that "even though proper *Miranda* warnings were not initially administered, the fact that [the Agents] told Naranjo at the outset that he did not have to speak with them suggests that they were not employing a deliberate two-step strategy[,]" see *id.* at 169. In a related (and precedential) opinion, the Third Circuit explained that

> where the statement is voluntary but made without the benefit of *proper Miranda* warnings, '[a] subsequent administration of *Miranda* warnings . . . should suffice to remove the conditions that precluded admission of the earlier statement. In that case, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.'

*United States v. Naranjo*, 426 F.3d 221, 228 (3d Cir. 2005) (emphasis added) (quoting *Oregon v. Elstad*, 470 U.S. 298, 315 (1985)). The *Naranjo* cases therefore provide some support to the propriety of applying *Elstad* when incomplete *Miranda* warnings—as well as where no *Miranda* warnings at all—are given.

Defendant essentially argues the inconsistency between Corporal Johnson's incomplete *Miranda* warning and Trooper Brautigam's proper *Miranda* warning created objective confusion regarding whether Defendant Payton had a right to have counsel appointed if she could not afford counsel and this confusion, which was never clarified, was never remedied. (See Doc. No. 208 at 5, 9.) Defendant attempts to distinguish *Street*, which, in any event, is not controlling here, by explaining that the defendant in *Street* never argued that his second set of statements should have been suppressed because the conflicting *Miranda* warnings created confusion. (See Doc. No. 208 at 8 n.2.) Defendant Payton points out that such an argument would have been difficult to make, given that the defendant in *Street* was a twenty-plus year veteran police officer

11

who was familiar with investigative processes and techniques. (See *id.*); see *Street*, 472 F.3d at 1302.

Two observations are relevant to this argument. First, in *Street*, the Eleventh Circuit noted that the Government wisely did not argue that Street's twenty-plus years of experience as a police officer was relevant to the quality of the *Miranda* warnings required, given the language of *Miranda*,[5] and examined the adequacy of the warnings Street received "as if he were a layman." *Street*, 472 F.3d at 1311. Second, there is no evidence here that the inconsistent *Miranda* warnings caused any confusion in the instant case and, in light of the totality of the circumstances, the Court does not find that the combination of the initial *Miranda* warning given to Defendant Payton, which omitted her right to have counsel provided for her if she could not afford counsel but did not affirmatively misstate this right, and the subsequent *Miranda* warning Defendant Payton received, which included this right, given by different officers and involving temporal and geographical distance is objectively confusing or misleading so as to prevent the second warning from properly conveying to Defendant Payton her rights under *Miranda*. While in some cases the omission of one right in an initial *Miranda* warning, later included in a subsequent warning, *may* be more misleading than a complete omission of *Miranda* warnings before a suspect makes an initial statement which omission is later cured before the suspect makes a subsequent statement, this potentiality did not come to fruition in this case. In these

---

[5] Specifically, the Eleventh Circuit quoted the following passage from *Miranda*:

> "The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the privilege so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given. Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation; a warning is a clearcut fact. More important, whatever the background of the person interrogated, a warning at the time of the interrogation is indispensable to overcome its pressures and to insure that the individual knows he is free to exercise the privilege at that point in time."

*United States v. Street*, 472 F.3d at 1310 (quoting *Miranda*, 384 U.S. at 468-69).

circumstances, where there was no affirmative contradiction between the warnings received by Defendant Payton and the totality of the circumstances is such that combination of the two warnings given to Defendant Payton is not objectively confusing or misleading so as to prevent the second warning from properly conveying to Defendant Payton her rights under *Miranda*, the Court believes that the *Elstad/Seibert* line of cases should govern the analysis. Consequently, the Court will apply these precedents to the instant matter.

The first question in an *Elstad/Seibert* analysis is whether the officers deliberately used a two-step interrogation process. See *Kiam*, 432 F.3d at 532 (citing *Seibert*, 542 U.S. at 621-22 (Kennedy, J., concurring)). Defendant acknowledges that Corporal Johnson's incomplete *Miranda* warning was inadvertent and no *Seibert* type of analysis is proper.[6] (See Doc. No. 208 at 10.) In any event, there is no evidence suggesting Corporal Johnson's omission was anything other than an inadvertent oversight and the Court concludes that there was no deliberate attempt to sidestep *Miranda* here. Once the Court determines that the flawed *Miranda* warning was not deliberate, it must rely upon on *Elstad*, as instructed by Justice Kennedy. *Kiam*, 432 F.3d at 532; see *Seibert*, 542 U.S. 622 (Kennedy, J., concurring). Under *Elstad*,

> absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.

*Elstad*, 470 U.S. at 314.

---

[6] In her Supplemental Proposed Findings of Fact and Conclusions of Law, Defendant Payton states: "The record now suggests that Corporal Johnson's erroneous *Miranda* warning was inadvertent and thus that no *Seibert* type of analysis is proper consistent with Justice Kennedy's concurrence in *Seibert*." (See Doc. No. 208 at 11.) Defendant Payton then proceeds to argue that Defendant's waiver of her *Miranda* rights to Trooper Brautigam was not knowing and voluntary under the principles of *Elstad*. (See *id.*)

The Court will first address whether Corporal Johnson used coercive or improper tactics in obtaining the initial statement. Because, as explained below, the Court concludes he did not, the Court will then proceed to address whether Defendant Payton's waiver of her rights at the Pennsylvania State Police barracks was knowing, intelligent, and voluntary.

Defendant Payton appears to argue that her initial statement given to Corporal Johnson was coerced. (See Doc. No. 208 at 10-11.) In support of this argument, Defendant Payton implores the Court to recall that Corporal Johnson failed to properly advise Defendant Payton of her *Miranda* rights, exceeded the bounds of Defendant Payton's consent when searching beneath the liner in the trunk of Defendant Payton's vehicle, and that Defendant Payton "was in visible distress at the time of her initial statements to Corporal Johnson because of her pregnancy." (*Id.* at 10-11.) The distress referenced by Defendant Payton appears to arise from Defendant Payton's need to use a restroom. (See Doc. No. 28 at 32; Doc. No. 150 at 48.) In her Motion to Suppress and her initial Proposed Findings of Fact and Conclusions of Law, Defendant Payton also alleges that "Corporal Johnson appeared to console [Defendant Payton], telling her that everything would be ok[ay] while representing to her that he was not going to let anything happen to her" and cites this as a reason that Defendant Payton's statement was not knowing, voluntary, and intelligent. (See Doc. No. 28 at 32; Doc. No. 150 at 48.) The Government disputes that Defendant Payton's initial statement to Corporal Johnson was the product of coercion or improper tactics. (See Doc. No. 211 at 7.) Citing the video of the traffic stop, admitted into evidence at the initial suppression hearing, the Government asserts that Corporal Johnson was calm, caring, and forthright with Defendant Payton at the scene. (*Id.*)

"The question as to compulsion is 'whether the will of the defendant had been overborne so that the statement was not his free and voluntary act . . . .'" *Bryant*, 785 F.2d at 367-68

14

(quoting *Procunier v. Atchley*, 400 U.S. 446. 453 (1971)); see also *Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002) (quoting *Arizona v. Fulminate*, 499 U.S. 279, 288 (1991) ("[A] statement is involuntary when the suspect's 'will was overborne in such a way as to render his confession the product of coercion.'") "In determining whether a statement is voluntary, Supreme Court precedent requires consideration of 'the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.'" *Lam v. Kelchner*, 304 F.3d at 264 (quoting *Dickerson v. United States*, 530 U.S. 428, 434 (2000)).

While Defendant correctly states that Corporal Johnson failed to properly advise Defendant Payton of her *Miranda* rights and exceeded the scope of Defendant Payton's consent in executing his search of the vehicle (see Doc. No. 199 at 41), neither of these occurrences support a finding of coercion. As the Supreme Court has explained, "[a] *Miranda* violation does not *constitute* coercion but rather affords a bright-line, legal presumption of coercion, requiring suppression of all unwarned statements." *Elstad*, 470 U.S. at 301 n.1. Pursuant to this legal presumption, Defendant Payton's statements to Corporal Johnson have been suppressed. (See Doc No. 199 at 53.) However, the initial flawed *Miranda* warning does not demonstrate that coercion in fact occurred and the Court finds nothing in the circumstances surrounding Corporal Johnson's rendering of the flawed *Miranda* warning to warrant a finding of actual coercion or compulsion. Additionally, although Corporal Johnson exceeded the scope of Defendant Payton's consent in searching her vehicle (see Doc. No. 199 at 41), this Court held in its December 28, 2012 Opinion that the search of the area behind the trunk liner was justified pursuant to probable cause (see *id.* at 46); Corporal Johnson's execution of the search was therefore lawful and no Fourth Amendment violation occurred. Defendant has not presented, and the Court is not aware of, any reason why a lawful search justified by one of the exceptions

15

other than the consent exception to the warrant requirement of the Fourth Amendment would support a finding of coercion in the context of a defendant's later statements to law enforcement.

Therefore, the only possible "coercion" occurred when Corporal Johnson attempted to reassure Defendant Payton and when Corporal Johnson questioned Defendant Payton knowing that she needed to use a restroom. Evidence produced at the initial suppression hearing demonstrates that Corporal Johnson attempted to reassure Defendant Payton after the drugs were initially discovered. (See Government's Exhibit 1 (video of traffic stop) from July 19, 2011 Suppression Hearing.) Some time later, Corporal Johnson administered incomplete *Miranda* warnings to Defendant Payton and engaged in conversation with Defendant Payton.[7] (See *id.*) Corporal Johnson did not, however, make any explicit offer of leniency. (See *id.*) By contrast, Corporal Johnson stated that he would not make "any promises, threats, or anything like that" (*id.*) and the Court finds that a reasonable person would not interpret Corporal Johnson's statements as making such an offer or suggesting that Defendant Payton would not be charged with commission of a crime.

With respect to Defendant Payton's pregnancy and need to use a restroom, in light of the totality of the circumstances, set forth more thoroughly in this Court's December 28, 2012 Opinion (see generally Doc. No. 199), the Court finds that this condition did not render Defendant Payton's statements to Corporal Johnson involuntary. At no point during her conversation with Corporal Johnson did Defendant Payton indicate that she was in severe discomfort as a result of her need to use a restroom and the evidence does not support the conclusion that any discomfort experienced by Defendant Payton was such that her will was overborne and her statement was not a free and voluntary act. (See Government's Exhibit 1

---

[7] This occurred approximately seven minutes after Corporal Johnson first made reassuring statements to Defendant Payton. (See Government's Exhibit 1 (video of traffic stop) from July 19, 2011 Suppression Hearing.)

16

(video of traffic stop) from July 19, 2011 Suppression Hearing.) Prior to answering Corporal

Johnson's questions, Defendant Payton, audibly distressed, expressed concern about going into

premature labor as a result of the events transpiring. (See *id.*) Corporal Johnson reassured

Defendant Payton relative to this concern before advising her of her rights. (See *id.*) After

receiving these assurances and indicating that she believed she understood her rights, Defendant

Payton proceeded to respond to Corporal Johnson's questions in a steady voice, unbroken by the

sounds of distress previously present. (See *id.*; Doc. No. 199 at 12-13.)

Although Defendant Payton appeared to be distressed by the events unfolding

particularly in light of the fact that she was soon expecting a child, the Fifth Amendment is not

concerned "with moral and psychological pressures to confess emanating from sources other

than official coercion[,]" *Elstad*, 470 U.S. at 304, and this stress did not arise from any action of

Corporal Johnson or the Pennsylvania State Police. There is no evidence of any violence or

intimidation by Corporal Johnson or any other members of the Pennsylvania State Police present

on the scene. Nor is there any evidence that Defendant Payton's "mental condition affected her

ability to give the statement or that it caused her to give the statement against her will." See

*Flood v. United* States, 867 F. Supp. 2d 539, 549 (D. Del. 2012) (concluding that movant's

statement to police was made of her own free will and was not coerced by the conduct of police

where movant alleged she was in a "devastated state" of worry about her child at the time of her

arrest and police statement). The Court's findings as to Defendant Payton's age, English fluency

and mental acuity, set forth in this Court's December 28, 2012 Opinion (see Doc. No. 199 at 33)

and incorporated by reference as if fully set forth herein, also support the conclusion that

Defendant Payton's statements to Corporal Johnson were rendered voluntarily and not as a

product of coercion.

17

Because this Court concludes that Defendant Payton's statement's to Corporal Johnson were made voluntarily and were not the product of coercion or improper tactics, the improperly warned questioning of Defendant Payton at the scene "'did not abridge [Defendant's] constitutional privilege . . . but departed only from the prophylactic standards'" laid down by the Supreme Court in *Miranda* to safeguard that privilege. *Elstad*, 470 U.S. at 308 (quoting *Michigan v. Tucker*, 417 U.S. 433, 446 (1974). Therefore, the Court will proceed to analyze whether Defendant Payton's waiver of her rights at the Pennsylvania State Police barracks was knowing, intelligent, and voluntary.

"A defendant may waive his *Miranda* rights if the waiver is made knowingly, intelligently, and voluntarily." *United States v. Pruden*, 392 F.3d 241, 246 (3d Cir. 2005). "Two factors affect this determination:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived."

*Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (internal quotations omitted)).

Defendant Payton argues that the second set of statements made at the Pennsylvania State Police barracks should be suppressed because "the coercion inherent in Corporal Johnson's initial interrogation carried over to Trooper Brautigam's questioning . . . ." (Doc. No. 208 at 11.) The Court concluded *supra* that there was no coercion present in Corporal Johnson's initial interrogation and there is no evidence that any pressure was exerted upon Defendant Payton to secure the second set statements made to Trooper Brautigam. Rather, the evidence shows that the conversation between Defendant Payton and Trooper Brautigam was casual and low-key,

with Defendant Payton responding to Trooper Brautigam's questions in a cooperative manner. Therefore, the Court will focus on whether Defendant Payton waived her rights at the Pennsylvania State Police barracks with full awareness of the right being abandoned and the consequences of the decision to abandon it.

To this point, Defendant argues that Defendant Payton "could not have objectively known exactly what her rights were at the time or believed that her assertion of the Fifth Amendment privilege against self incrimination and/or her assertion of her Sixth Amendment right to counsel would have been honored . . . ." (Doc. No. 208 at 11.) As discussed above, the Court does not find that the combination of the initial *Miranda* warning given to Defendant Payton, which omitted her right to have counsel provided for her if she could not afford counsel but did not affirmatively misstate this right, and the subsequent *Miranda* warning Defendant Payton received, was objectively confusing or misleading so as to prevent the second warning from properly conveying to Defendant Payton her rights under *Miranda* and there is no evidence that Defendant Payton was in fact confused. Defendant Payton admits the second warning was a "literally proper explanation of her Miranda rights" (Doc. No. 208 at 1-2) and does not challenge the substance or completeness *Miranda* warning given by Trooper Brautigam. Beyond the alleged objective confusion which this Court rejects, Defendant Payton does not challenge her capacity to understand either the warnings given by Trooper Brautigam or the consequences of signing a waiver of her rights and proceeding to answer Trooper Brautigam's questions after being read and being given an opportunity to read her *Miranda* rights off the Rights Warnings and Waiver form. As the Court observed in its December 28, 2012 Opinion, on March 12, 2008, Defendant Payton was of a sufficient age to possess a valid Indiana state driver's license and was able to speak and understand English. (Doc. No. 199 at 32.) Defendant Payton was also able to

19

respond to Trooper Brautigam's questions in an appropriate and articulate manner. The questioning to which Defendant Payton was subject was not particularly lengthy and Defendant Payton had an opportunity to have food and water and use the rest room. In sum, the Court concludes that the totality of the circumstances demonstrate that Defendant Payton's *Miranda* waiver at the Pennsylvania State Police barracks was knowing, intelligent, and voluntary. Therefore, Defendant Payton's Motion to Suppress, as it relates to the statements made by Defendant Payton following the second administration of Defendant Payton's *Miranda* rights at the Pennsylvania State Police barracks and the execution of a written waiver of these rights by Defendant Payton, is **DENIED**.

## V.    CONCLUSION

For the above-stated reasons, the Court will **DENY** Defendant Sterling Yazmin Long-Payton's Motion to Suppress Evidence (Doc. No. 28) as it relates to the limited issue before the Court. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:08-cr-07 |
| | ) | |
| STERLING YAZMIN LONG-PAYTON, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this 10th day of April 2013, upon consideration of Defendant Sterling

Yazmin Long-Payton's Motion to Suppress Evidence Obtained as a Result of an Unlawful

Search and Seizure with Accompanying Citation of Authority (hereinafter Defendant Payton's

"Motion to Suppress Evidence") (Doc. No. 28) and the United States' opposition thereto, and in

accordance with the foregoing Opinion, **IT IS HEREBY ORDERED** that Defendant Payton's

Motion to Suppress, as it relates to the statements made by Defendant Payton following the

second administration of Defendant Payton's *Miranda* rights at the Pennsylvania State Police

barracks and the execution of a written waiver of these rights by Defendant Payton, is **DENIED**.

**BY THE COURT:**

**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**

21